STATE OF CONNECTICUT *v.* ROY EDWARD CASEY
(12272)

PETERS, C. J., HEALEY, SHEA, DANNEHY and F. HENNESSY, Js.

Argued June 10—decision released August 19, 1986

*Temmy Ann Pieszak,* assistant public defender, with whom, on the brief, were *Joette Katz,* public defender, and *Suzanne Zitser,* assistant public defender, for the appellant (defendant).

*Carl Schuman,* assistant state's attorney, with whom were *David Cohen,* assistant state's attorney, and, on the brief, *Eugene J. Callahan,* state's attorney, and *Paul Autley,* law student intern, for the appellee (state).

ARTHUR H. HEALEY, J. The issue dispositive of this appeal is whether the trial court erred in its charge to the jury on the defense of extreme emotional disturbance, provided by General Statutes (Rev. to 1981) § 53a-54a (a).[1]

The defendant was found guilty by a jury of the murder of Brian Williams in violation of General Statutes (Rev. to 1981) § 53a-54a. The trial court had granted the defendant's motion for judgment of acquittal on an additional charge of criminal attempt at murder of

---

[1] General Statutes (Rev. to 1981) § 53a-54a provides: "Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

the victim's sister. General Statutes §§ 53a-49 and 53a-54a (a). The defendant was sentenced to twenty-five years imprisonment.

The defendant raises six issues on appeal: (1) whether the trial court's instructions on extreme emotional disturbance were adequate; (2) whether the defendant was deprived of a fair trial and due process of law by the state's references to the defendant's invocation of his fifth amendment rights; (3) whether the trial court's instructions on insanity were erroneous; (4) whether the defendant was deprived of effective assistance of counsel;[2] (5) whether the trial court erred in refusing to charge the jury on criminally negligent homicide; and (6) whether the trial court's instruction on manslaughter constituted reversible error.[3] While our finding of error on the first issue is dispositive of this appeal, we will discuss such other assignments of error insofar as they may impact on a new trial.

The jury could reasonably have found the following facts: The defendant, Roy E. Casey, rented a room at a low monthly rental from eighty-three year old Madeline Bauerfeld of Belltown Road, Stamford, in exchange for general upkeep and maintenance of her property. On April 19, 1982, at approximately 6:30 p.m., the defendant saw the victim washing a car in the driveway of his home next to the Bauerfeld residence. The defendant and the victim argued about the water from the victim's hose coming onto the Bauerfeld lawn which had been newly seeded that day.

---

[2] The defendant's fourth claim is that he was denied effective representation of counsel as a result of his counsel's erroneous request to charge on the issue of insanity. We need not review this claim because of our disposition of this case. We cannot conceive that counsel will again request or that the trial court will charge on other than the statutory definition of insanity.

[3] We need not address this issue because it is unlikely to impact on a new trial.

The defendant, fifty-eight years old, and the victim, twenty-two years old, had argued about similar incidents over the years. On the day of the incident, the defendant went into the house to have Bauerfeld speak with the victim. Bauerfeld and the victim became involved in an argument during which the defendant heard the victim say: "F____k you" to her. Bauerfeld then heard her door open. The defendant fired four shots from a shotgun, three of which hit the victim and resulted in his immediate death.

Shortly after the shooting, the defendant telephoned the Stamford police department and reported that he had killed "the bastard that threatened me. [The victim] said he was going to kill me. [The victim is] not going to kill me, 'cause he's dead." He proceeded to supply the police with his and the victim's names, ages and addresses, the type of weapon he had used and its location. He said the argument had begun because the victim had let water run onto his lawn. The tape recording of this telephone conversation with the police from his home was an exhibit in evidence.

Two of the police officers who had responded to the scene testified that the defendant was "unusually calm," "like he was a shell" and that he "didn't really seem to respond too much to the situation." The defendant was then interviewed by the police.

A clinical psychologist, Charles Opsahl, testified for the defense that, based on the results of tests performed on the defendant, the defendant's behavior on the night of the shooting was consistent with a "transient, disassociative state." Opsahl further testified that in such a state, which is a disassociation or separation between thought and feeling, the defendant would have been incapable of forming any intentions and would have fired the gun even if two police officers had been standing "right next to him." The defendant testified

at trial that he did not remember getting his gun, loading it, or shooting the victim and he remembered only "parts" of the telephone call to the police and his subsequent arrest and police interview. He remembered Bauerfeld yelling at him that he had killed "the kid next door" and that when he looked out the door and saw the victim, he then telephoned the police.

## I

The defendant claims that the trial court denied him his constitutional rights to an adequately instructed jury and to a fair trial by failing to provide the jury with complete instructions on the defense of extreme emotional disturbance. We see no need to invoke a constitutional analysis in order to resolve this claim. The defendant filed a written request to charge on the defense of extreme emotional disturbance that included the statements that a "homicide influenced by an extreme emotional disturbance is not one which is necessarily committed in the 'hot blood' stage" and that the "defense does not even require a provoking or triggering event." The court did not instruct the jury as requested by the defendant. The defendant contends that the instructions, because they did not incorporate his request, were inadequate under the circumstances of this case. We agree.

A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. A refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance. *State* v. *Gabriel*, 192 Conn. 405, 418, 473 A.2d 300 (1984); *State* v. *Cooper*, 182 Conn. 207, 211, 438 A.2d 418 (1980). The state does not dispute that the request was relevant to an issue in the case, the defendant's intent, or that it was an accurate statement of the law. Rather, the state argues that the court's instructions "adequately cov-

ered" the substance of the defendant's request and that the requested language "would not have added appreciably to the jury's understanding of the law . . . ." We disagree.

The trial court's charge on extreme emotional disturbance began with a reading of the relevant language of § 53a-54a (a) that "it shall be an affirmative defense that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for or preclude a conviction of manslaughter in the first degree or any other crime." The court then noted that a defense of extreme emotional disturbance may mitigate culpability and that the burden of proving its existence was on the defendant, and defined the terms "extreme" and "emotional disturbance." In informing the jury about the preconditions for invocation of the defense, the court stated that the defendant was required to prove that he "was exposed to an extremely unusual and overwhelming state, that is, not mere annoyance or unhappiness" and that "[t]he defendant had an extreme emotional reaction to it as a result of which there was a loss of self control, and reason was overborne by extreme intense feelings such as passion, anger, distress, grief, excessive agitation or other similar emotions." The court nowhere alluded to the possibility that extreme emotional disturbance might arise by virtue of a significant mental trauma causing a long period of brooding and a sudden, apparently unprovoked, violent reaction.

In *State* v. *Elliott,* 177 Conn. 1, 6–7, 411 A.2d 3 (1979), we cited with approval *Patterson* v. *New York,* 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977),

in which the United States Supreme Court "noted that the defense of extreme emotional disturbance is a considerably expanded version of the common law defense of heat of passion or sudden provocation." We determined in *State* v. *Elliott,* supra, that § 53a-54a (a) "does not require a provoking or triggering event" nor does it require that the homicide be committed in the hot blood stage; id.; and that the "defenses of extreme emotional disturbance and heat of passion are not interchangeable." Id., 4. The charge on this defense to the extent given by the trial court was inadequate under the circumstances of this case.

The basis for the defense theory at trial was the entire history of the relationship between the defendant and the victim rather than the single incident of the water on the newly seeded lawn and the subsequent argument that occurred just prior to the killing. The defense sought to show that the homicide in this case, as in *Elliott,* "was brought about by a significant mental trauma that caused the defendant to brood for a long period of time and then react violently, seemingly without provocation." Id., 8.

This case more closely resembles *State* v. *Elliott* than *State* v. *Reid,* 193 Conn. 646, 480 A.2d 463 (1984), in which we held jury instructions similar to those found to be erroneous in *State* v. *Elliott,* supra, to constitute harmless error. In *State* v. *Reid,* supra, the defendant was nevertheless found guilty of manslaughter in the first degree despite the erroneous jury instructions. Unlike the present case, the erroneous portion of the charge in *State* v. *Reid,* supra, 659, was "wholly compatible with the defendant's theory" of a sudden, single incident of provocation.

To demonstrate the harmfulness of the trial court's charge, the defendant asserts that the state's closing argument to the jury, to which no objection was made,

included a "detailed chronological analysis" of the events on the evening of the shooting and "invited the jury to conclude that the defendant should have 'cooled down' during the process." In addition, the defendant notes that during the course of its argument the state questioned the adequacy of the provocation. The attorney for the state remarked that when he "think[s] of extreme emotional disturbance, [he] think[s] of a person coming home and finding their spouse committing adultery and then going crazy. That's what [he] think[s] of. Just to give you an example. It's got to be extreme."

The defendant characterizes the example given by the prosecutor of finding a spouse committing adultery as the "classic 'heat of passion' scenario." The defendant does not claim that this portion of the state's argument was inappropriate or in any way unethical. The defendant's claim is that the court's charge omitting his requested language on provocation and heat of passion combined with the prosecutor's argument served to prejudice his right to a fair adjudication of his extreme emotional disturbance defense.

The state contends that in determining whether the jury had been misled, it should be remembered that " 'an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.' " *State* v. *Kurvin,* 186 Conn. 555, 563, 442 A.2d 1327 (1982); see *State* v. *Preyer,* 198 Conn. 190, 198, 502 A.2d 858 (1985). We note that in *State* v. *Preyer,* supra, 194, unlike this case, the defendant had not submitted a request to charge to the trial court on the issue later raised on appeal. While this general principle may be accurate in most circumstances, the omission of the requested instruction under the circumstances of this case was so prejudicial to the defendant that it constituted reversible error.

There was error in the court's failure to instruct the jury as requested by the defendant in light of all the circumstances set out above and a new trial is ordered.

## II

The defendant claims that he was deprived of due process of law and a fair trial when the state (a) elicited testimony that the defendant had invoked his right to terminate police questioning, and (b) commented in closing argument on the defendant's failure to relate certain details to the police. Although the defendant failed in the trial court to preserve this issue for appeal, we will review this claim because it is likely to recur upon retrial.

We note initially that the defendant admits that "trial counsel failed to preserve this issue for appellate review." We agree with the defendant's claim that review is mandated under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), because this claim implicates the defendant's fundamental constitutional rights and a fair trial.

## A

The defendant was advised of his rights under *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), at his residence when he was arrested and, again, shortly thereafter at the police station. The defendant was interviewed at the police station and validly waived his right to remain silent and indicated that he would agree to an oral questioning but he would not provide a sworn written statement. The police station interview lasted "about an hour and five minutes." The state elicited from Detective Edward Cook that the interview ended when the defendant stated that he wanted to stop the interview and "talk to a lawyer," that the police honored that request, and that questioning ceased upon the asser-

tion of this request. The defendant did not object to this line of questioning. Defense counsel, during cross-examination of Cook, also elicited references to the defendant's request to cease the interview and to contact an attorney.

In *Miranda,* the United States Supreme Court stated: "[I]t is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." *Miranda* v. *Arizona,* supra, 468 n.37. "References to one's invocation of the right to remain silent [are] not always constitutionally impermissible, however." *State* v. *Moye,* 177 Conn. 487, 496, 418 A.2d 870, vacated and remanded on other grounds, 444 U.S. 893, 100 S. Ct. 199, 62 L. Ed. 2d 129, on remand, 179 Conn. 761, 409 A.2d 149 (1979). "The evidence was presented by the state to show the investigative effort made by the police and the sequence of events as they unfolded (an acceptable purpose under *State* v. *Ralls,* [167 Conn. 408, 427–29, 356 A.2d 147 (1974)])." *State* v. *Moye,* supra, 499. The defendant concedes that had the state's reference to his invocation of rights been limited to the exchanges during Cook's testimony, this court might reasonably have concluded that the references were a "mere recitation"; *United States* v. *Collins,* 652 F.2d 735, 740 (8th Cir. 1981); of his response. The defendant claims, however, that "in light of the theory of recent fabrication running through the state's rebuttal argument" this court should not view the references as innocent, narrative statements. See *Alderman* v. *Austin,* 695 F.2d 124 (5th Cir. 1983), cert. denied, 474 U.S. 911, 106 S. Ct. 282, 88 L. Ed. 2d 245 (1985).

We do not agree that the sequence of events as they unfolded on the night of the shooting are related to the state's theory of recent fabrication of an explanation

for the shooting. Rather, we find this case similar to *State* v. *Moye,* supra, and that the state's introduction of the testimony was for permissible purposes, i.e., the sequence of events as they unfolded, and not for the impermissible purpose of showing that the cessation of his statement was "an indication of silence in the face of accusation." *State* v. *Moye,* supra, 499. The state's use in argument of the testimony of the sequence of events was therefore not improper. There is no error.

B

The defendant raises as a claimed related issue that the prosecutor's comments in closing argument "invited the jury to conclude that [his] failure to tell police certain details indicated he had had the disputed intent to kill." The defendant claims that these comments violated the rule of law enunciated in *Doyle* v. *Ohio,* 426 U.S. 610, 96 S. Ct. 2240, 48 L. Ed. 2d 91 (1976). We do not agree.

The United States Supreme Court in *Doyle* v. *Ohio,* supra, 619, held that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." The court stated that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Id., 618. The court further clarified its holding in *Anderson* v. *Charles,* 447 U.S. 404, 408, 100 S. Ct. 2180, 65 L. Ed. 2d 222, reh. denied, 448 U.S. 912, 101 S. Ct. 27, 65 L. Ed. 2d 1173 (1980), where it stated that "*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been

induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." We do not see any reason why prosecutorial comment during closing argument is not analogous to cross-examination for the purpose of the application of this rule. On cross-examination of his landlady, as well as during his own testimony, the defendant introduced evidence that he had heard the victim insult her during the argument that preceded the shooting. The fact that the defendant failed to mention the insult to his landlady during police questioning but testified to that incident during his trial is the equivalent of having given inconsistent statements for the purposes of this rule. See *State* v. *Whelan,* 200 Conn. 743, 748 n.4, 513 A.2d 86 (1986). The state's comments[4] on the defendant's omission of the insult incident in an hour long interview were not "designed to draw meaning from silence" and the defendant's statements at the interview and at trial "pertained to the same subject matter." See *Hockenbury* v. *Sowders,* 718 F.2d 155, 158–59 (6th Cir. 1983), cert. denied, 466 U.S. 975, 104 S. Ct. 2354, 80 L. Ed. 2d 826 (1984); see generally *State* v. *Morrill,* 197 Conn. 507, 534–38, 498 A.2d 76 (1985).

As we held in *State* v. *Talton,* 197 Conn. 280, 295, 497 A.2d 35 (1985), we believe that "[t]he *Doyle* decision . . . is not applicable to the facts of this case. The crucial distinction is that, here, the defendant did not remain silent after he was arrested and advised of his rights. After being given *Miranda* warnings, the

---

[4] The state commented as follows in its closing arguments to the jury: "You know we heard all this testimony of the cursing of Mrs. Bauerfeld. But you know what's amazing to me, nobody mentions it that night. The defendant doesn't tell you that that's why he went out and did this. He doesn't mention a word about Mrs. Bauerfeld. We don't hear that until a year later when he comes to testify. Not on the phone, not to Officer Dolan, not to Detective Cooke, nothing about it. Not a word. Picture the defense wants to paint is this was the overwhelming situation that was confronting the defendant, and yet he doesn't mention a word about it."

defendant clearly chose to forego his right to remain silent. Once an arrestee has waived his right to remain silent, the *Doyle* rationale is not operative because the arrestee has not remained silent and an explanatory statement assuredly is no longer 'insolubly ambiguous.' By speaking, the defendant has chosen unambiguously not to assert his right to remain silent. He knows that anything he says can and will be used against him and it is manifestly illogical to theorize that he might be choosing not to assert the right to remain silent as to part of his exculpatory story, while invoking the right as to other parts of his story." See *State* v. *Morrill,* supra, 536, 537 n.12.[5] The state's comments in its closing argument to the jury were not improper.

## III

The defendant's third claim is that the trial court erred in its instructions to the jury on insanity. Three additional related issues on insanity are also raised by the defendant: (1) the court's comments on the "presumption of sanity" warrant reversal; (2) the court erred in omitting legal sanity from its supplemental charge on the elements of the offenses; and (3) the court's instructions did not constitute harmless error as there was sufficient evidence to put insanity in issue.

We have repeatedly held that a claim that a trial court's instruction on insanity which incorporates the statutory definition under General Statutes § 53a-13 (a) as well as "extraneous considerations not encompassed within the statutory definition," here the *Durham* rule; *Durham* v. *United States,* 214 F.2d 862 (D.C. Cir. 1954); is not reviewable when it was not properly raised at trial. *State* v. *Carter,* 200 Conn. 607, 610, 513 A.2d 47

---

[5] The defendant's reply brief places great reliance on the recent decision of *Wainwright* v. *Greenfield,* 474 U.S. 284, 106 S. Ct. 634, 88 L. Ed. 2d 623 (1986). A close examination of *Greenfield* discloses that it is factually inapposite to the case before us.

(1986); *State* v. *Carter,* 198 Conn. 386, 396–97, 503 A.2d 576 (1986); *State* v. *Jackson,* 198 Conn. 314, 320–21, 502 A.2d 865 (1986); *State* v. *Harman,* 198 Conn. 124, 134, 502 A.2d 381 (1985); *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985). "We do not approve of the use of a common law definition of insanity in conjunction with an instruction on the statutory test. *State* v. *Toste,* 178 Conn. 626, 633, 424 A.2d 293 (1974)." *State* v. *Jackson,* supra, 321–22. Further discussion of this claim is unnecessary because we do not anticipate that the same erroneous instruction will be given at a retrial. We also have no reason to believe that the remaining claims of error in the charge will arise at the new trial.

## IV

The defendant next claims that the trial court erred in refusing his written request to charge on the lesser included offense of criminally negligent homicide, General Statutes § 53a-58 (a). We shall consider this issue because it is likely to arise on a new trial of this matter. The defendant filed a written request to charge on criminally negligent homicide. General Statutes § 53a-58 (a).[6] The trial court instructed the jury on a number of lesser included offenses[7] to the crime of intentional murder but it did not charge under § 53a-58 (a).

General Statutes § 53a-45 (c) provides that the "jury before which any person indicted for murder . . . is

---

[6] General Statutes § 53a-58 (a) provides: "Sec. 53a-58. CRIMINALLY NEGLIGENT HOMICIDE: CLASS A MISDEMEANOR. (a) A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person, except where the defendant caused such death by a motor vehicle."

[7] The trial court instructed the jury that it might find the defendant guilty of murder or of a number of lesser included offenses, including manslaughter in the first or second degree and manslaughter in the first or second degree with a firearm. General Statutes §§ 53a-55, 53a-55a, 53a-56, 53a-56a.

tried may find him guilty of homicide in a lesser degree than that charged." "Whether an accused may avail himself of this statutory privilege by means of a jury instruction is governed by the principles set forth in *State* v. *Rodriguez,* 180 Conn. 382, 399–400, 429 A.2d 919 (1980), and *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980) . . . ." *State* v. *Falby,* 187 Conn. 6, 28, 444 A.2d 213 (1982).

A lesser included instruction is warranted only if the four conditions of *State* v. *Whistnant,* supra, are met. For purposes of this case, we need only examine the third requirement, the sufficiency of the evidence justifying conviction of the lesser offense, to conclude that the trial court did not err in refusing to charge as requested.

After the trial court had instructed the jury, the defendant excepted to the omission of the requested charge. The trial court stated: "[T]he Court is of the opinion that there was no negligence presented in evidence that would warrant a charge on criminally negligent homicide. . . ."

The defendant claims that the trial court's ruling was erroneous because there was sufficient evidence at trial to support a conviction under § 53a-58 (a).

Under General Statutes § 53a-3 (14),[8] a person acts with criminal negligence with respect to a result or to a circumstance when he fails to perceive a substantial and unjustifiable risk that such a result will occur or that such circumstance exists. The defendant relies pri-

---

[8] General Statutes § 53a-3 (14) provides: "A person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

marily on the testimony of the clinical psychologist, Opsahl, that the defendant, if he had been in a disassociative state at the time of the shooting, would have been incapable of forming any intentions and would not have known that he had a shotgun in his hand. The defendant claims that the jury could have inferred that if he did not realize that he was holding a gun then he also did not realize that if he used the weapon that there was a substantial risk of injury or death. We cannot agree with the defendant's reasoning. While we agree with the defendant that Opsahl's testimony was evidence, if the defendant had been in a disassociative state on the night of the shooting, that would tend to negate the intent necessary for murder, this same evidence, however, does not serve the defendant on this claim. Under the reasonable man standard of § 53a-58 (a), a person is criminally liable if he "fails to perceive a substantial and unjustifiable risk . . . ." The defense theory was that the defendant was in a disassociative state in which there would have been no connection between thought and action. Hence, the defense theory was that there was no perception whatsoever on the part of the defendant that he was firing a gun, not that he failed to perceive the risk of death to the victim from his actions. The defendant himself testified that he did not remember most of the events surrounding the shooting. We agree with the ruling of the trial court on the basis of the evidence presented at this trial and express no opinion as to whether such a charge should be given in a trial if additional evidence is presented.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other justices concurred.