## STATE OF CONNECTICUT v. JOHN J. CABRAL
(SC 17019)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

---

Argued January 4—officially released September 20, 2005

*Michele C. Lukban,* assistant state's attorney, with whom, on the brief, were *Kevin T. Kane,* state's attorney, and *Stephen M. Carney,* assistant state's attorney, for the appellant (state).

*Jeremiah Donovan,* for the appellee (defendant).

*Opinion*

PALMER, J. A jury found the defendant, John J. Cabral, guilty of conspiracy to possess one kilogram or more of marijuana with intent to sell in violation of General Statutes §§ 21a-278 (b) and 53a-48, and attempt to possess one kilogram or more of marijuana with intent to sell in violation of General Statutes §§ 21a-278 (b) and 53a-49 (a) (1). The trial court rendered judgment in accordance with the jury verdict,[1] and the defendant appealed to the Appellate Court, claiming, inter alia, that the trial court improperly had: (1) permitted the state to use evidence of his postarrest silence and invocation of his right to counsel against him in violation of *Doyle* v. *Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976); and (2) admitted into evidence certain hearsay statements made by an individual who purportedly was acting as an agent of the police. The Appellate Court agreed with both claims and reversed the judgment of the trial court. *State* v. *Cabral,* 75 Conn. App. 304, 311, 316, 319, 815 A.2d 1234 (2003). We granted the state's petition for certification to appeal limited to those two issues;[2] *State* v. *Cabral,* 264 Conn. 914, 826 A.2d 1158 (2003); and now reverse the judgment of the Appellate Court.[3]

---

[1] The trial court sentenced the defendant to a total effective term of imprisonment of eight years, execution suspended after six years, and five years probation.

[2] We granted the state's petition for certification to appeal limited to the following issues: "1. (a) Did the Appellate Court properly conclude that the trial court violated the defendant's federal constitutional right by permitting the state to impeach him by his postarrest silence and request for an attorney?

"(b) If the answer to question 1 (a) is 'yes,' was the error harmless?

"2. (a) Did the Appellate Court properly conclude that the trial court improperly admitted hearsay statements by the witness David Levarge?

"(b) If the answer to question 2 (a) is 'yes,' was the error harmless?" *State* v. *Cabral,* 264 Conn. 914, 826 A.2d 1158 (2003).

[3] The Appellate Court also addressed, and rejected, two other claims that the defendant had raised on appeal to that court, namely, that the trial court improperly had: (1) failed to suppress his postarrest statements; and (2) allowed the state to question the defendant regarding certain alleged omissions in his application for the appointment of a public defender. See *State*

The opinion of the Appellate Court sets forth the following facts that the jury reasonably could have found. "In 1995, the defendant met David Levarge, who lived next door to the defendant's mother-in-law. The [defendant and Levarge] became friends and routinely socialized. In or about 1997, the defendant introduced Levarge to his friend, Robert Anderson, and the three men became friends.

"In early October, 1998, Anderson approached the defendant to purchase some marijuana, but the defendant said he had none. Anderson then told the defendant that he knew someone named 'Pete' from California from whom he could buy marijuana. Subsequently, Anderson ordered three pounds of marijuana from Pete for which he and the defendant agreed to pay $3000. They also decided to have the marijuana delivered to Levarge's house because the defendant did not want the police to trace the marijuana to his house.

"Sometime in mid-October, 1998, Anderson learned from the defendant and Levarge that the marijuana had not yet arrived. Anderson contacted Pete, who informed him that the marijuana had been shipped to and received at the address provided. Pete asked for telephone numbers for the defendant and Levarge.

"On October 28, 1998, Levarge, who did not testify at trial, went to the state police barracks in Montville and spoke to Trooper Robert Bardelli. From there, the two men proceeded to Levarge's home. When they arrived, the telephone rang. The answering machine

v. *Cabral*, supra, 75 Conn. App. 308–11, 318. The Appellate Court addressed the first claim because it is closely related to the defendant's contention that the trial court improperly had permitted the state to adduce evidence of his postarrest silence and invocation of his right to counsel. Id., 309 n.3. The Appellate Court addressed the second claim because of the likelihood that that issue would arise at a new trial. Id., 318. In part III of this opinion, we also address, and reject, those two additional claims.

picked up, and a voice said that Levarge 'had better show up with the package he was supposed to have.'

"Shortly thereafter, Levarge climbed into a crawl space in his home and retrieved three pounds of marijuana, which he handed to Bardelli. Bardelli notified his supervisor and assembled a team of officers to come to Levarge's home where they formulated a course of action. Bardelli requested that Levarge make a telephone call to Anderson. In that conversation, which was monitored and recorded by the state police, Levarge told Anderson that he now had the marijuana. He also explained that he had not been home to receive the shipment because he had taken his son to a physician and that he had told that to the defendant. He told Anderson that he would leave the package in the backseat of his son's car and that Anderson should have the defendant pick it up.

"On that same day, at approximately 7:30 p.m., the police fabricated a package and placed it in Levarge's son's vehicle, which was parked at Levarge's residence. At approximately 8:45 p.m., the defendant appeared and retrieved the package from the vehicle. As the defendant began to depart, the police left their surveillance locations, announced their presence, converged on the defendant and arrested him. Bardelli testified that he read the defendant his rights pursuant to *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), at the time of his arrest.

"The police then drove the defendant to a gasoline station approximately five minutes from Levarge's house. While in the police cruiser at the gasoline station, the defendant told the police that Anderson had sent him to pick up the [marijuana]. When the police asked him to put his statement in writing, he declined and stated that he wanted to consult with an attorney."

*State* v. *Cabral*, supra, 75 Conn. App. 306–308. At that point, questioning of the defendant ceased.

I

We first address the state's claim challenging the conclusion of the Appellate Court that the defendant's due process rights were violated when the trial court permitted the state to use evidence of the defendant's postarrest silence and invocation of his right to an attorney against him. We agree with the state that its use of that evidence against the defendant was not improper.

The following additional facts and procedural history are relevant to this claim. At trial, the state adduced testimony from Bardelli, who explained that the defendant had been advised of his *Miranda* rights upon his arrest. Bardelli further explained that he and Sergeant Jeffrey Hotsky of the Connecticut state police then asked the defendant if he was willing to cooperate with their ongoing investigation. According to Bardelli, the defendant stated that "he was just the person picking up the marijuana for an individual named Anderson." Bardelli further testified that he asked the defendant if he would provide a written statement but that the defendant declined, stating that he did not wish to say anything more and that he wanted an attorney. Bardelli also testified that the defendant was not questioned any further once he invoked his fifth amendment rights. Thereafter, the state elicited substantially similar testimony from Hotsky.[4] The defendant did not object to any of this testimony.

---

[4] We note that defense counsel elicited such testimony from Sergeant James Morin of the Connecticut state police on cross-examination. On direct examination by the state, Morin testified regarding the defendant's oral statement. On cross-examination, defense counsel asked Morin whether the defendant had asked to speak to an attorney and whether he had been given that opportunity. Morin responded that the defendant had made such a request and that the questioning of the defendant was terminated at that time. On redirect examination, Morin testified that the defendant had indicated that he did not wish to reduce his oral statement to writing.

The defendant testified on his own behalf. He denied that he had told the police that he was picking up marijuana. He testified, rather, that he had explained to the police that he believed he was picking up tomatoes and salsa to bring to Anderson's house. The defendant also testified that the police did not advise him of his *Miranda* rights before he spoke to the police and that, in fact, he did ask the officers to advise him of his *Miranda* rights, but they did not do so until much later that evening. The defendant further indicated that the police had attempted to intimidate him.

On cross-examination, the defendant testified that, although the police officers had employed intimidation tactics, he was not afraid of them and would not be coerced into making a false statement. The defendant acknowledged that he had been given the opportunity to provide a written statement but had declined to do so. The assistant state's attorney asked the defendant immediately thereafter: "[Y]ou didn't think it would be a good idea . . . to have it in writing, what had happened to you that night?" The defendant replied: "No, I still, at that point, wasn't afforded an attorney, and I had asked for one. I didn't get an attorney for three days."[5] No objection was raised to this cross-examination.

During closing arguments, the assistant state's attorney summarized the evidence that the state had

[5] The following is the colloquy that is the subject of the alleged *Doyle* violation:

"[Assistant State's Attorney]: Okay. . . . [T]he police officer said to you, 'Would you like to make a statement and put it into writing?' Do you agree with that?

"[The Defendant]: Yes. Yes.

"[Assistant State's Attorney]: Okay. And you decided not to do that?

"[The Defendant]: Yes.

"[Assistant State's Attorney]: Okay. And you didn't think it would be a good idea then to have it in writing, what had happened to you that night?

"[The Defendant]: No, I still, at that point, wasn't afforded an attorney, and I had asked for one. I didn't get an attorney for three days."

adduced, underscoring the incriminating statement that the defendant had made to the arresting officers. During that portion of his closing argument, the assistant state's attorney also referred to the defendant's refusal to provide a written statement and his request to speak with an attorney, stating: "Now, this [statement] isn't something we can play for you. We can't play the audiotape or show you a videotape. But what the three police officers who were present all agree [to] is that, both in the car and then again at the gas station, what [the defendant] did was—said, 'Yeah, I was picking up marijuana. I was picking up the marijuana to bring it to Anderson.' He confessed. When he was asked to give a written statement, he said, 'No. I don't want to do that. I prefer to talk with a lawyer first.' But, before that time, he confesses. He says, 'Yeah, I knew it was marijuana. I was picking it up to bring it to my friend, Mr. Anderson.' And there was no disagreement about this among the police officers. The testimony is clear."[6] The defendant did not object to the assistant state's attorney's closing argument.

On appeal to the Appellate Court, the defendant claimed that the trial court improperly had permitted the state to elicit testimony regarding the defendant's postarrest silence in its case-in-chief, during its cross-examination of the defendant, and in closing arguments to the jury, all in violation of *Doyle* v. *Ohio*, supra, 426 U.S. 610, and that those improprieties were harmful.[7]

[6] Neither the assistant state's attorney nor defense counsel made any other reference during closing arguments to the defendant's invocation of his right to remain silent and his right to counsel.

[7] Because the defendant had failed to object to any of these alleged improprieties, the Appellate Court reviewed his unpreserved claims under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), in which this court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed

See *State* v. *Cabral*, supra, 75 Conn. App. 311–12. The state claimed, inter alia, that its use of the defendant's postarrest silence and invocation of his right to counsel did not violate *Doyle*. The Appellate Court agreed with the defendant. Id., 311. On appeal to this court, the state renews its claim that the use of the defendant's postarrest silence and invocation of his right to counsel was not improper and, consequently, that the reference to that evidence by the assistant state's attorney during closing argument also was not improper. We agree with the state.[8]

"In *Doyle* [v. *Ohio*, supra, 426 U.S. 610] . . . the United States Supreme Court held that the impeachment of a defendant through evidence of his silence following his arrest and receipt of *Miranda* warnings violates due process. The court based its holding [on] two considerations: First, it noted that silence in the wake of *Miranda* warnings is insolubly ambiguous and consequently of little probative value. Second and more important[ly], it observed that while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. . . . The court . . . reaffirmed *Doyle*'s reasoning in *Wainwright* v. *Greenfield*, 474 U.S. 284, 290, 106 S. Ct. 634, 88 L. Ed. 2d 623 (1986), in which it held that the defendant's silence following

to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40; see *State* v. *Cabral*, supra, 75 Conn. App. 311–12.

[8] We agree with the Appellate Court that the defendant is entitled to review of his unpreserved constitutional claims, having satisfied the first two prongs of *State* v. *Golding*, supra, 213 Conn. 239–40. See footnote 7 of this opinion. For the reasons that follow, however, we disagree with the Appellate Court that the defendant is entitled to prevail under *Golding*.

his arrest and receipt of *Miranda* warnings could not be used at trial to rebut his defense of insanity. The court reasoned: The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony. It is equally unfair to breach that promise by using silence to overcome a defendant's plea of insanity." (Citation omitted; internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 712–13, 759 A.2d 995 (2000).

"[A]lthough *Doyle* prohibits impeachment of a defendant with evidence of his post-*Miranda* silence, we expressly stated in [*State* v. *Plourde*, 208 Conn. 455, 468, 545 A.2d 1071 (1988), cert. denied, 488 U.S. 1034, 109 S. Ct. 847, 102 L. Ed. 2d 979 (1989)] that it also is fundamentally unfair, and, therefore, a deprivation of due process, for the state to use evidence of a defendant's post-*Miranda* silence as affirmative proof at trial. . . ." (Internal quotation marks omitted.) *State* v. *Montgomery*, supra, 254 Conn. 714. Consequently, "[i]t . . . is constitutionally impermissible for the state to use a defendant's post-*Miranda* silence either as affirmative proof of guilt or to impeach the defendant." *State* v. *Peeler*, 267 Conn. 611, 647, 841 A.2d 181 (2004). Furthermore, "[w]ith respect to post-*Miranda* warning 'silence' . . . [it] does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted." *Wainwright* v. *Greenfield*, supra, 474 U.S. 295 n.13.

"References to one's invocation of the right to remain silent [are] not always constitutionally impermissible, however." (Internal quotation marks omitted.) *State* v. *Casey*, 201 Conn. 174, 183, 513 A.2d 1183 (1986). Thus, "we have allowed the use of evidence of a defendant's invocation of his fifth amendment right in certain lim-

ited and exceptional circumstances." *State* v. *Montgomery,* supra, 254 Conn. 716–17 n.30. In particular, we have permitted the state some leeway in adducing evidence of the defendant's assertion of that right for purposes of demonstrating "the investigative effort made by the police and the sequence of events as they unfolded"; (internal quotation marks omitted) *State* v. *Hull,* 210 Conn. 481, 490, 556 A.2d 154 (1989); as long as the evidence is not "offered to impeach the testimony of the defendant in any way." Id., 491.

Finally, "[i]n *Anderson* [v. *Charles,* 447 U.S. 404, 100 S. Ct. 2180, 65 L. Ed. 2d 222 (1980)], the United States Supreme Court held that '*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.' Id. [408]. . . . Essentially, the court concluded that the impeachment questions were proper because they were not intended to attach meaning to silence, 'but to elicit an explanation for a prior inconsistent statement.' Id., 409. [Thus] '[when a] defendant elects to speak to the police and gives statements that he later contradicts at trial, a prosecutor's inquiry into the defendant's failure to give the exculpatory account before trial does not draw a negative inference from the defendant's decision to remain silent but rather from his prior inconsistent statement.' " (Citation omitted.) *State* v. *Alston,* 272 Conn. 432, 443–44, 862 A.2d 817 (2005), quoting *United States* v. *Donnat,* 311 F.3d 99, 104–105 (1st Cir. 2002). With these principles in mind, we now turn to the merits of the state's claims.

The state first contends that the Appellate Court improperly concluded that the trial court had violated *Doyle* by permitting the state to elicit testimony from

Bardelli and Hotsky that, although the defendant initially agreed to speak to them, he thereafter declined to put his statement in writing, invoked his right to remain silent and requested an attorney. We recently considered and rejected a similar claim in *State* v. *Alston*, supra, 272 Conn. 441–42, in which we concluded that the claim raised by the defendant in that case was foreclosed by our decision in *State* v. *Casey*, supra, 201 Conn. 182–84. In *Alston*, as in *Casey*, the state elicited testimony in its case-in-chief that the defendant had invoked his right to remain silent and had terminated the police interview after initially speaking voluntarily to the police. *State* v. *Alston*, supra, 441–42; see also *State* v. *Casey*, supra, 182–83. As we explained in *Alston*, the state elicited the challenged testimony in both *Alston* and *Casey* "in the course of questioning regarding [the police] investigation of the crime." *State* v. *Alston*, supra, 442; see *State* v. *Casey*, supra, 183–84. We further observed that the testimony, which "had been offered for the permissible purpose of relaying the sequence of events as they unfolded"; (internal quotation marks omitted) *State* v. *Alston*, supra, 442; did not violate *Doyle* because it "merely described the investigative efforts of police." Id.

For the same reasons, the state's use of the challenged testimony in the present case did not violate *Doyle*. The state elicited the testimony, which was brief, merely to explain the course of events and to place the defendant's incriminating oral statement in its proper context, rather than "for the impermissible purpose of showing that the cessation of his statement was an indication of silence in the face of accusation." (Internal quotation marks omitted.) *State* v. *Casey*, supra, 201 Conn. 184. There is nothing in the record to indicate that the state sought to use the testimony to establish the defendant's guilt, and we see no reason why a juror would view the testimony in that light.

We also agree with the state that no *Doyle* violation occurred during the assistant state's attorney's cross-examination of the defendant. During direct examination, the defendant denied that he had told the police that the package that he was picking up contained marijuana. He testified, rather, that he had informed the police that he thought the package contained tomatoes and salsa. The brief questioning of the defendant by the assistant state's attorney regarding the defendant's refusal to provide a written statement to that effect was not designed to impeach the defendant concerning his invocation of his fifth amendment rights but, rather, to probe the veracity of the defendant's trial testimony regarding the substance of the statement that he voluntarily had given to the police following his arrest. The questioning therefore falls within the exception to *Doyle* articulated by the United States Supreme Court in *Anderson* v. *Charles*, supra, 447 U.S. 408, for cross-examination involving an inquiry into a defendant's prior inconsistent statement.[9]

Finally, the state maintains that it was not a violation of *Doyle* for the assistant state's attorney to have mentioned, in closing argument, the defendant's refusal to reduce his oral statement to writing. We are not persuaded that this comment was improper. The assistant state's attorney made the comment during that portion of his argument in which he addressed the state's inability to produce a recorded version of the defendant's statement, an issue that was particularly important in view of the defendant's testimony challenging the credibility of the state's evidence regarding the substance of that statement. The comment, therefore, like the assistant state's attorney's cross-examination of the

---

[9] Although the defendant maintained that his statement to the police was consistent with the explanation that he gave at trial, the state, of course, was not bound to accept that assertion in light of the contrary testimony of Bardelli, Hotsky and Morin.

defendant, was not made for the purpose of impeaching the defendant's trial testimony as a recent fabrication in light of the defendant's post-*Miranda* silence but, rather, for the purpose of underscoring police testimony regarding the sequence of events as well as the inculpatory nature of the defendant's statement. Furthermore, when viewed in context, the comment, which was brief, carried no implication that the defendant was guilty because he had invoked his fifth amendment rights. We therefore agree with the state that the closing argument of the assistant state's attorney was not constitutionally infirm.

## II

We next address the state's claim that the Appellate Court improperly concluded that the defendant was entitled to a new trial because the trial court had allowed the state to adduce certain inadmissible hearsay evidence. In particular, the state contends that, although the defendant objected to the admission of that evidence, he did not do so on hearsay grounds and, therefore, the Appellate Court improperly considered the defendant's claim. We agree with the state.

The following additional facts and procedural history are necessary to our resolution of this claim. One of the offenses with which the defendant was charged was conspiracy to possess more than one kilogram of marijuana with the intent to sell. The information alleged that the defendant had committed the following two overt acts in furtherance of the conspiracy: (1) "[the defendant] arranged with . . . Anderson to have marijuana delivered to the home of . . . Levarge"; and (2) "[he later] went to [Levarge's] home . . . to pick up marijuana for the purpose of delivering it to . . . Anderson . . . ."

As we have explained, the evidence adduced at trial established that, after Levarge approached Bardelli with

information regarding the package of marijuana, the police arranged for Levarge to make a telephone call to Anderson. In that call, which the police tape-recorded, Levarge notified Anderson that the shipment had arrived, and Anderson agreed to send the defendant to pick up the package of marijuana from a vehicle that was parked outside Levarge's home. The state notified the defendant that it intended to introduce into evidence the tape recording of the conversation between Levarge and Anderson.

The defendant objected to the state's use of that tape recording. In particular, the defendant claimed that, because Levarge was acting as an agent of the police when he telephoned Anderson, he was not a coconspirator within the meaning of this state's conspiracy statute. See General Statutes § 53a-48 (a). In support of his contention, the defendant relied on *State* v. *Grullon*, 212 Conn. 195, 198–99, 203, 562 A.2d 481 (1989), in which this court held that an accused cannot be guilty of conspiracy unless the state has proven beyond a reasonable doubt that the accused conspired with a person other than a police informant or agent. The defendant asserted that, because Levarge was acting as an agent of the police prior to placing the telephone call to Anderson, he was "contaminated" when he made that call. The defendant further asserted that that "contamination flow[ed] downward from Levarge to Anderson," and "across to both [the defendant] and Anderson," with the result that the tape-recorded conversation could not be used to establish the existence of a conspiracy between Anderson and the defendant, apparently because the conspiracy was no longer ongoing once Levarge had agreed to cooperate and to place the telephone call.[10] The trial court denied the defen-

---

[10] We note that, at one point during the colloquy on the defendant's objection to the state's use of the tape recording, the trial court stated: "Well, the purpose of *Grullon* is to get around the rule—to get you around the rule that the statements of one conspirator are admissible against a coconspirator. And what we're addressing here is the statements of Anderson

dant's objection and permitted the state to introduce the tape recording into evidence.[11]

On appeal to the Appellate Court, the defendant claimed that the state's use of the tape-recorded conversation was improper because Levarge's statements did not fall within any recognized hearsay exception. See *State v. Cabral*, supra, 75 Conn. App. 316. The Appellate Court agreed, concluding that, although a coconspirator's out-of-court statement, made while the conspiracy is ongoing and in furtherance of the conspiracy, is admissible as an exception to the hearsay rule; id.; see Conn. Code Evid. § 8-3 (1) (D); Levarge was acting as an agent of the police and, therefore, he was not a coconspirator for purposes of that hearsay exception. *State v. Cabral*, supra, 316–17. The Appellate Court also concluded that the statements that Levarge had made in the tape-recorded conversation were harmful to the defendant and, consequently, required a new trial. Id., 317–18.

We have stated that "[t]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objec-

. . . ." At no time before or after that statement, however, did the court or defense counsel indicate that the defendant's objection was predicated on a claim of hearsay. Indeed, at no time during the colloquy did the court or counsel use the term "hearsay." Finally, at the conclusion of the colloquy, and after the court's statement regarding "the purpose of *Grullon*," defense counsel reiterated his claim that the conspiracy terminated once Levarge had agreed to cooperate with the police and to place the telephone call. In sum, the record does not support the defendant's contention that he objected to the state's use of the tape-recorded conversation on hearsay grounds.

[11] In addition, the defendant maintained that any probative value of the tape-recorded conversation was outweighed by its prejudicial effect, apparently because of certain expletives that were part of the conversation.

tion so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . .

"These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Citations omitted; internal quotation marks omitted.) *State v. Gonzalez*, 272 Conn. 515, 539–40, 864 A.2d 847 (2005); cf. Practice Book § 5-5.[12]

At trial, the defendant objected to the state's use of the tape-recorded conversation on the ground that, because Levarge was acting as an agent of the police when he spoke with Anderson, the tape recording was inadmissible to demonstrate the existence of an ongoing conspiracy. On appeal, however, the defendant raised a different claim, namely, that the tape recording contained statements that were inadmissible because those statements did not fall within the coconspirator exception to the hearsay rule. The defendant, therefore, was not entitled to review of his nonconstitutional claim.[13]

---

[12] Practice Book § 5-5 provides in relevant part: "Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he or she desires it to go upon the record, before any discussion or argument is had. . . ."

[13] We note that the trial court properly rejected the claim that the defendant actually had raised, namely, that the tape recording was inadmissible under our holding in *State* v. *Grullon*, supra, 212 Conn. 203. As the trial court noted, the state was not seeking to establish a conspiracy between Levarge and the defendant but, rather, between Anderson and the defendant.

The trial court also reasonably rejected the defendant's claim that the probative value of the tape recording was outweighed by its prejudicial effect. See footnote 11 of this opinion. As we repeatedly have stated, a trial

## III

The defendant raises two additional claims as alternative grounds for affirmance. Specifically, the defendant contends that the trial court improperly: (1) denied his motion to suppress his postarrest statement to the police because he was not advised of his *Miranda* rights; and (2) permitted the state to question him regarding certain alleged omissions in his application for the appointment of a public defender. As we have noted; see footnote 3 of this opinion; the Appellate Court addressed and rejected these claims.[14]

Neither of the defendant's claims merits lengthy discussion. With respect to the defendant's first claim, we agree with the Appellate Court that the evidence adduced at the hearing on the defendant's motion to suppress his statement amply supports the trial court's determination that the defendant was advised of his *Miranda* rights prior to speaking to the police. Indeed, Bardelli testified without contradiction that he had so warned the defendant. This claim, therefore, is without merit.

court has wide latitude in making such a determination, and it will not be reversed on appeal in the absence of a manifest abuse of discretion. See, e.g., *State* v. *Merriam*, 264 Conn. 617, 664, 835 A.2d 895 (2003). Although the conversation between Levarge and Anderson was laced with expletives, the conversation was short, and, of course, the defendant did not participate therein. Under the circumstances, we cannot say that the language contained on the tape recording was so inflammatory that the trial court abused its discretion in permitting the state to introduce the recording into evidence.

[14] The state maintains that we are not obligated to review the defendant's claims because the defendant failed to raise them in a cross petition for certification to appeal. We elect not to decide whether the defendant should have done so in this case, however, because we previously denied the state's motion to strike the claims, thereby rendering moot any request for permission to raise the claims in a cross petition for certification to appeal in the event that we granted the state's motion to strike. In light of the particular procedural history of this case, therefore, we address the merits of the defendant's alternative grounds for affirmance.

The defendant also asserts that the Appellate Court improperly concluded that the trial court had not abused its discretion in permitting the state to question him during cross-examination about whether he had failed to report certain "under the table" income on his application for the appointment of a public defender. On cross-examination, the defendant acknowledged that he had received "under the table" income between October, 1998, and June, 2000, and that he had not reported that income to the Internal Revenue Service (IRS) or to the state department of revenue services (department). The defendant also admitted that he had not reported that income to the office of the public defender because he had not been asked to do so and did not know that he was required to do so.

Although we are not persuaded that the trial court abused its discretion in permitting the state to elicit such testimony, even if we were to conclude that the questioning was improper, it clearly was harmless. As we have indicated, the defendant conceded that he had failed to report his "under the table" income to the IRS or the department. In light of that admission, his acknowledgment that he also had failed to report that income to the office of the public defender was, at most, cumulative. Accordingly, the defendant has failed to establish that the court's allegedly improper evidentiary ruling entitles him to a new trial.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.