## TYREESE BOWENS *v.* COMMISSIONER OF CORRECTION
## (AC 27260)

Flynn, C. J., and Harper and Peters, Js.

Argued September 18—officially released December 11, 2007

*Alan E. Dillon*, special public defender, for the appellant (petitioner).

*Timothy F. Costello*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Tyreese Bowens, appeals following the denial of certification to appeal from the judgment denying his petition for a writ of habeas corpus. The petitioner claims that the habeas court abused its discretion in denying certification to appeal and improperly rejected his claim that his trial counsel had provided ineffective assistance. We dismiss the petitioner's appeal.

In 1998, the petitioner was convicted, following a jury trial, of murder in violation of General Statutes § 53a-54a (a).[1] Following his direct appeal, we affirmed the judgment of conviction. *State* v. *Bowens*, 62 Conn. App.

[1] This court recounted the facts underlying the petitioner's conviction in his direct appeal: "On August 18, 1996, Kevin Hood, the victim, and Tiara Phelmetta were riding around New Haven in Hood's car. They stopped in front of a convenience store at the well lit intersection of Columbus Avenue, Arch Street and Washington Avenue. Hood made some purchases at the convenience store, and, upon his return to the car, Phelmetta noticed a man with a hooded jacket walking toward the car from Washington Avenue. The man came up to the front passenger seat window where she was seated and peered through from about three feet away. She was able to look closely at his facial features before he turned away and walked around the back of the car, appearing to head away from the car. Suddenly, the man changed course and again approached the car. As he walked up to the driver's side, Phelmetta saw him withdraw a gun from underneath his shirt. The man leaned into Hood's open window and shot Hood several times. Phelmetta jumped out of the car through her window and fled to safety.

"Thereafter, officers from the New Haven police department patrolling on Columbus Avenue came upon the victim. A few minutes later, Phelmetta returned to the scene and told a police detective that she had witnessed the shooting and gave a description of the shooter. The following day, on August 19, 1996, Phelmetta went to the police station, viewed a photographic array and identified the [petitioner] as the shooter. He was arrested and ultimately found guilty of murder . . . ." *State* v. *Bowens*, 62 Conn. App. 148, 149–50, 773 A.2d 977, cert. denied, 256 Conn. 907, 772 A.2d 600 (2001).

148, 773 A.2d 977, cert. denied, 256 Conn. 907, 772 A.2d 600 (2001). The petitioner subsequently filed a petition for a writ of habeas corpus in which he claimed, in relevant part, that his court-appointed trial counsel's failure to investigate and to present the testimony of an eyewitness who allegedly possessed exculpatory evidence amounted to ineffective assistance.[2] The habeas court rejected the petitioner's claims and then denied his petition for certification to appeal. This appeal followed.

We begin by setting forth the applicable standard of review. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . We

---

[2] The petitioner claimed in his habeas petition ineffective assistance of counsel, actual innocence and partiality on the part of jurors. The ineffective assistance claim alleged four deficient acts on the part of the petitioner's trial attorney: (1) failure to subpoena Randi Hobson, (2) failure to call Otis Brown as a witness, (3) failure to perform an adequate investigation to find the real murderer and (4) failure to prepare an alibi witness properly. On appeal, the petitioner challenges only the habeas court's resolution of the ineffective assistance claim as it relates to the failure to subpoena Hobson.

examine the petitioner's underlying claim of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable. . . .

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney

performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citations omitted; internal quotation marks omitted.) *Dwyer* v. *Commissioner of Correction*, 102 Conn. App. 838, 840–42, 927 A.2d 347, cert. denied, 284 Conn. 925, 933 A.2d 724 (2007).

At the hearing on the petition, the court heard evidence that on September 11, 1996, two New Haven police officers in the course of their investigation interviewed the occupants of an apartment building located near where the shooting had occurred and at which the petitioner occasionally would stay. There, the officers interviewed Randi Hobson, who was watching dogs for an occupant of the building. Hobson told the officers that she had witnessed the shooting and that the petitioner had not been the shooter. She also stated that at the time of the shooting, she had been exiting a nearby convenience store when a car driven by the shooter collided with the victim's car. The shooter, while still inside his car, then shot the victim, who remained inside his own car. Hobson declined to accompany the officers to the police department to provide a written statement.

Sometime thereafter, Hobson met with the petitioner's trial counsel, Thomas Ullman. Ullman did not take a formal statement from Hobson at this time, but rather,

in an effort to minimize the amount of the petitioner's bail, sent Hobson to speak with the prosecutor assigned to the case. Hobson never appeared before the prosecutor.

Shortly before trial, one of Ullman's investigators interviewed Hobson, and she provided a "completely different story" than the one she had provided to the police. Hobson this time stated that she had been inside a convenience store at the time of the shooting, when she observed the victim and the shooter get into an argument. The shooter then followed the victim out of the store and fired his gun. As was the case with her first version of the shooting, Hobson said the petitioner was not the shooter. Ullman took no further statements from Hobson, nor did he call Hobson as a witness at the petitioner's criminal trial.

At the habeas trial, Ullman testified concerning his reasons for not calling Hobson as a witness. He testified that his trial strategy had been to attack the credibility of the state's lone eyewitness, as well as to highlight the lack of motive on the part of the petitioner. Consistent with this strategy, Ullman chose not to present the testimony of Hobson, whom he viewed as a reluctant, incredible witness.

The petitioner claims that Ullman's failure to subpoena and to present the testimony of Hobson amounted to ineffective assistance of counsel, in that the jury never had an opportunity to hear Hobson's potentially exculpatory testimony. We cannot agree. The habeas court concluded, and we agree, that on the basis of the aforementioned evidence, "Hobson presents [herself] not only as a reluctant witness, but one whose credibility is significantly at issue."[3] We also

---

[3] Specifically, Hobson's reluctance as a witness was demonstrated by evidence that she declined to provide a written statement to investigating officers and failed to speak with the prosecutor after Ullman had encouraged her to do so. Hobson's incredibility reasonably stems from the evidence that she provided Ullman with inconsistent testimony that was in conflict

agree with the habeas court that Ullman reasonably concluded that "even if he could have [successfully] secured [Hobson] as a witness, [she] would have been a liability." As "the presentation of testimonial evidence is a matter of trial strategy"; (internal quotation marks omitted) *Adorno* v. *Commissioner of Correction*, 66 Conn. App. 179, 186, 783 A.2d 1202, cert. denied, 258 Conn. 943, 786 A.2d 428 (2001); we conclude that it was reasonable for Ullman to have acted as he did.

In light of the foregoing conclusion, the petitioner has not demonstrated that the issues raised with regard to the court's denial of his petition for a writ of habeas corpus are debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions raised deserve encouragement to proceed further. Thus, we conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

---

with testimony provided by expert and lay witnesses and that she had at least some personal connection with the petitioner.