## JOHN CABRAL *v.* COMMISSIONER OF CORRECTION
## (AC 27929)

Bishop, McLachlan and Harper, Js.

1

Argued January 10—officially released May 27, 2008

*Mary Boehlert*, special public defender, for the appellant (petitioner).

*Stephen M. Carney*, senior assistant state's attorney, with whom, on the brief, was *Michael L. Regan*, state's attorney, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, John Cabral, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus in which he alleged that he was denied the effective assistance of trial counsel. The petitioner claims that the court improperly determined that (1) trial counsel's failure to present testimony from him at a suppression hearing was not prejudicial to him and (2) trial counsel's failure to object to the admissibility of certain evidence at trial was not an instance of deficient representation. We affirm the judgment of the habeas court.

In 2000, a jury found the petitioner guilty of conspiracy to possess one kilogram or more of marijuana with intent to sell in violation of General Statutes §§ 53a-48 and 21a-278 (b) as well as attempt to possess one kilogram or more of marijuana with intent to sell in violation of General Statutes §§ 53a-49 (a) (1) and 21a-278 (b). The trial court rendered judgment in accordance with the verdict and sentenced the petitioner to a total effective term of imprisonment of eight years, suspended after six years, and five years probation.

The petitioner brought a direct appeal to this court, and this court reversed the judgment of conviction and remanded the case for a new trial. *State* v. *Cabral*, 75 Conn. App. 304, 815 A.2d 1234 (2003), rev'd, 275 Conn. 514, 881 A.2d 247, cert. denied, 546 U.S. 1048, 126 S. Ct. 773, 163 L. Ed. 2d 600 (2005). After our Supreme Court granted the state's petition for certification to appeal, our Supreme Court reversed the judgment of this court and upheld the judgment of conviction. *State* v. *Cabral*, 275 Conn. 514, 517, 881 A.2d 247, cert. denied, 546 U.S. 1048, 126 S. Ct. 773, 163 L. Ed. 2d 600 (2005).

Our Supreme Court summarized the facts that the jury reasonably could have found on the basis of the evidence presented at trial: "In 1995, the [petitioner] met David Levarge, who lived next door to the [petitioner's] mother-in-law. The [petitioner and Levarge] became friends and routinely socialized. In or about 1997, the [petitioner] introduced Levarge to his friend, Robert Anderson, and the three men became friends.

"In early October, 1998, Anderson approached the [petitioner] to purchase some marijuana, but the [petitioner] said he had none. Anderson then told the [petitioner] that he knew someone named 'Pete' from California from whom he could buy marijuana. Subsequently, Anderson ordered three pounds of marijuana from Pete for which he and the [petitioner] agreed to

pay $3000. They also decided to have the marijuana delivered to Levarge's house because the [petitioner] did not want the police to trace the marijuana to his house.

"Sometime in mid-October, 1998, Anderson learned from the [petitioner] and Levarge that the marijuana had not yet arrived. Anderson contacted Pete, who informed him that the marijuana had been shipped to and received at the address provided. Pete asked for telephone numbers for the [petitioner] and Levarge.

"On October 28, 1998, Levarge, who did not testify at trial, went to the state police barracks in Montville and spoke to Trooper Robert Bardelli. From there, the two men proceeded to Levarge's home. When they arrived, the telephone rang. The answering machine picked up, and a voice said that Levarge 'had better show up with the package he was supposed to have.'

"Shortly thereafter, Levarge climbed into a crawl space in his home and retrieved three pounds of marijuana, which he handed to Bardelli. Bardelli notified his supervisor and assembled a team of officers to come to Levarge's home where they formulated a course of action. Bardelli requested that Levarge make a telephone call to Anderson. In that conversation, which was monitored and recorded by the state police, Levarge told Anderson that he now had the marijuana. He also explained that he had not been home to receive the shipment because he had taken his son to a physician and that he had told that to the [petitioner]. He told Anderson that he would leave the package in the backseat of his son's car and that Anderson should have the [petitioner] pick it up.

"On that same day, at approximately 7:30 p.m., the police fabricated a package and placed it in Levarge's son's vehicle, which was parked at Levarge's residence. At approximately 8:45 p.m., the [petitioner] appeared

and retrieved the package from the vehicle. As the [petitioner] began to depart, the police left their surveillance locations, announced their presence, converged on the [petitioner] and arrested him. Bardelli testified that he read the [petitioner] his rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), at the time of his arrest.

"The police then drove the [petitioner] to a gasoline station approximately five minutes from Levarge's house. While in the police cruiser at the gasoline station, the [petitioner] told the police that Anderson had sent him to pick up the [marijuana]. When the police asked him to put his statement in writing, he declined and stated that he wanted to consult with an attorney." (Internal quotation marks omitted.) *State* v. *Cabral*, supra, 275 Conn. 518–19.

In 2002, while awaiting the disposition of his direct appeal, the petitioner brought an amended petition for a writ of habeas corpus. The petitioner alleged that his confinement was illegal because his trial counsel, John O'Brien, rendered ineffective assistance in many ways and thereby violated his due process right to a fair trial. Relevant to the claims raised on appeal, the petitioner alleged that O'Brien improperly "failed to present the testimony of witnesses with exculpatory testimony at pre-trial motions and trial, including but not limited to testimony of [the] [p]etitioner or others relative to [his] [m]otion to [s]uppress [evidence] dated June 28, 2000." The petitioner also alleged that O'Brien improperly "failed to properly object to hearsay evidence . . . ." The respondent, the commissioner of correction, denied that the petitioner's confinement was illegal and, with regard to the petitioner's specific claims of ineffective assistance, left the petitioner to his proof.

Following a hearing, during which the court received evidence including testimony from the petitioner and

O'Brien, the court issued a memorandum of decision denying the petition. The court subsequently granted the petition for certification to appeal; see General Statutes § 52-470 (b); and this appeal followed.

Before turning to the two claims raised in this appeal, we first set forth the applicable principles of law and the legal standard that govern our review. "In all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defense." U.S. Const., amend. VI. "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann* v. *Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970).

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable. . . .

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel

was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Bowens* v. *Commissioner of Correction*, 104 Conn. App. 738, 741–42, 936 A.2d 653 (2007), cert. denied, 286 Conn. 905, 944 A.2d 978 (2008).

"Turning to the prejudice component of the *Strickland* test, "[i]t is not enough for the [petitioner] to show that the errors [made by counsel] had some conceivable effect on the outcome of the proceeding. . . . Rather, [the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. . . . A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. . . . [A] court making the prejudice inquiry must ask if the [petitioner] has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." (Citation omitted; internal quotation marks omitted.) *Woods* v. *Commissioner of Correction*, 85

Conn. App. 544, 550, 857 A.2d 986, cert. denied, 272 Conn. 903, 863 A.2d 696 (2004).

"The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Thus, [t]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Citation omitted; internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 448, 936 A.2d 611 (2007). "Although a habeas court's findings of fact are reviewed under a clearly erroneous standard of review, questions of law are subject to plenary review." *Tyson* v. *Commissioner of Correction*, 261 Conn. 806, 816, 808 A.2d 653 (2002), cert. denied sub nom. *Tyson* v. *Armstrong*, 538 U.S. 1005, 123 S. Ct. 1914, 155 L. Ed. 2d 836 (2003).

I

The petitioner first claims that after properly determining that O'Brien was ineffective by failing to present his testimony during a suppression hearing, the habeas court improperly concluded that he failed to demonstrate that O'Brien's deficient representation in this regard was a basis on which to grant his petition. We disagree.

At the petitioner's criminal trial, O'Brien moved to suppress the statement that the petitioner made to police shortly after he had been taken into custody on October 28, 1998. This statement was the petitioner's admission that Anderson had sent him to Levarge's residence to pick up marijuana. The statement was admitted into evidence during the petitioner's criminal

trial. The habeas court found that "[t]he principal issue on the motion to suppress was whether or not the petitioner was advised of his *Miranda* rights and, if he was so advised, whether his statement was given before or after the advisement." The court thereafter made the following findings concerning what transpired during the hearing on the motion to suppress and O'Brien's representation of the petitioner therein: "The only people who were present at the time [of the petitioner's arrest] were three police officers and the petitioner. These were the only parties who could testify on the issue [concerning the admissibility of the petitioner's admission at the time of his arrest].

"The only person who testified during the suppression hearing was Trooper Bardelli. The petitioner was not called to testify. During the habeas trial, attorney O'Brien did not recall whether or not he had called the petitioner to testify at the hearing. From the trial transcript and the judge's decision denying the motion to suppress, it is clear that [the petitioner] did not testify.

"Trooper Bardelli testified that he advised the petitioner of his rights at the time of his arrest and that the incriminating statement was made by the petitioner after he had been so advised. The petitioner was then asked if he would put his statement in writing. When he declined to do so and stated that he wished to consult with an attorney, no further questions were asked. Trooper Bardelli also testified that the petitioner was again formally advised of his *Miranda* rights later at the police station and that a memorandum indicating the time of this advisement was made. The officer stated that this second advisement was standard procedure. The subsequent testimony of the other officers [during the trial] was consistent with Bardelli's testimony at the suppression hearing. It would not have been in the

petitioner's best interest to have called the officers to testify on his behalf.

"No reason has been advanced by [O'Brien] as to why the petitioner was not called to testify at the suppression hearing. As the trial court stated in its memorandum of decision during the motion to suppress: 'Although [the petitioner] could have done so with impunity, he did not testify at the suppression hearing.'

"Bardelli's testimony was not challenged or impugned in any way. By not testifying at the suppression hearing, the petitioner forfeited whatever chance he might have had to suppress the statement. [During the habeas proceeding, O'Brien] offered no reason for his failure to present his client's version as to what took place at the time of his arrest. It must be concluded that this failure to call his client to testify at the suppression hearing constituted ineffective assistance of counsel."

The court thereafter made the following findings and conclusions concerning the prejudice, if any, that inured to the petitioner as a result of O'Brien's failure to call him as a witness during the suppression hearing: "[At his criminal trial] the petitioner testified on his own behalf at the conclusion of the state's case. His testimony, as it applies to his statement to the police, was that he was going to Anderson's home to watch a fight on television and that Anderson had called him and asked him to pick up a bag at Levarge's house [and described] where it could be found. The petitioner stated that he assumed the bag contained salsa and tomatoes. He testified that he had never tried to obtain marijuana and was not under the impression that marijuana was in the package he picked up.

"It was further stated by the petitioner that he was not advised of his rights at the time of his arrest and that he had never before seen Trooper Bardelli in his

whole life. His testimony was that he informed the officers [at the scene that] he was there to pick up salsa and tomatoes.

"[At his criminal trial] the petitioner's testimony was countered by the testimony of Officers Cote Floyd, Charles Flynn, Sergeants Jeffrey Hotsky and James Morin of the Connecticut state police. The testimony of all of these officers confirmed Bardelli's presence at the scene when the petitioner was arrested. Officer Floyd's testimony also confirmed that Bardelli informed the petitioner of his *Miranda* rights at the time of arrest.

"Presumably, if the petitioner had testified at the suppression hearing, his testimony would have been substantially the same as his [trial] testimony. This testimony was that he had never seen Bardelli before and was not advised of his rights at the time of his arrest. Where all of the evidence concerning the admissibility of the statements came before the judge, it is difficult to see how the petitioner was prejudiced by his attorney's not calling him to testify at the suppression hearing. Certainly, the trial judge, if he had been convinced that the petitioner's version of the event was true and that he had not been properly advised by Bardelli prior to [making] his statement, would have been constrained to rectify the situation so that the ends of justice would prevail.

"There was also a question as to how incriminating the statement was. All of the evidence indicates that the petitioner picked up a package that was in the parked car. In his initial testimony [at the suppression hearing], Bardelli stated that the petitioner's statement was that he 'just picked up a package for Mr. Anderson.' This was not consistent with the petitioner's testimony [at trial]. In his subsequent testimony [at trial], Bardelli stated that the petitioner used the word 'marijuana,' rather than package. Attorney O'Brien was able to

cross-examine the officer on this point and present to the jury the inconsistency of the officer's testimony concerning the statement that the petitioner made.

"Considering all of the evidence, it appears unlikely that the motion to suppress would have been granted even if the petitioner [had] testified [at the suppression hearing]. However, if the motion had been granted and the petitioner's statement was not allowed into evidence, the state still had a strong case, which, in all likelihood, would have resulted in the same verdict of guilty. Considering all of the [previously discussed] factors, it must be concluded that the petitioner has failed to prove that he suffered any prejudice because he did not testify at the suppression hearing."

The petitioner challenges the habeas court's conclusion that even if the trial court had excluded his statement, the outcome of the trial likely would have been the same. To this end, the petitioner attempts to persuade us that, without using this statement, the state would have been unable to demonstrate that he was part of any conspiracy. The petitioner discounts the other evidence on which the state relied to demonstrate that a conspiracy existed. For these reasons, the petitioner claims that the habeas court "erred when it erroneously found [that] the petitioner was not prejudiced by the ineffectiveness of his attorney."

The petitioner's analysis is faulty in that it overlooks the gist of the habeas court's decision with regard to this issue. The court devoted much of its analysis to explaining why the petitioner's testimony at the suppression hearing likely would have had no effect on the trial court's denial of the motion to suppress. The court also went on to observe that because the petitioner testified in his defense at trial, the trial court had an opportunity to hear his testimony concerning the circumstances of his statement to the police and to

exclude his statement if the court determined that it was obtained in contravention of his rights, as had been alleged in the motion to suppress. Additionally, the habeas court, in the latter part of its analysis, stated that the state had a strong case absent the evidence at issue.

On the basis of the habeas court's findings and our review of the record, we conclude that the court reasonably and logically determined that it was very unlikely that the petitioner's testimony concerning his version of the circumstances surrounding his statement, which the petitioner acknowledges was revealed in substance during his testimony at the criminal trial, would have affected the trial court's ruling on the motion to suppress. The testimony elicited at trial reflects that the state had strong evidence corroborating Bardelli's testimony that the petitioner made the statement at issue after being advised of his rights. The record also reflects that after the petitioner testified concerning his recollection of these events, the trial court did not revisit the issue raised in the motion to suppress. Thus, not only did five witnesses contradict the petitioner's testimony, but the court did not revisit the issue raised in the motion to suppress so as to indicate that it deemed the petitioner's version of events to be credible.

The petitioner cannot overcome the initial burden of demonstrating that it was likely that O'Brien's ineffectiveness affected the court's ruling on his motion to suppress. He also cannot overcome the burden of demonstrating that even if such a showing had been made, the court's adverse ruling likely affected the guilty verdict reached by the jury. We agree with the habeas court's assessment of the overall strength of the state's case. In the absence of the petitioner's admission as to his criminal purpose in obtaining the package from Levarge's automobile, the other evidence presented by the state strongly supported the guilty verdict. In short,

the state presented compelling circumstantial evidence with regard to the petitioner's presence at Levarge's automobile on the evening of October 28, 1998. This evidence tended to demonstrate that the petitioner was a conspirator in a drug related enterprise. Even had the court suppressed the incriminating statement that he made to the police, it is highly unlikely that the petitioner's defense, which was that he was merely obtaining salsa and tomatoes from Levarge's automobile, would have fared any better in the eyes of the jury.

For these reasons, we conclude that the court properly determined that the petitioner had not demonstrated that there was a reasonable probability that, but for O'Brien's failure to call him as a witness during the suppression hearing, the result of the trial would have been different.

## II

The petitioner next claims that the court improperly failed to conclude that O'Brien rendered ineffective assistance in failing to object to the admissibility of certain evidence on hearsay grounds. We disagree.

Our Supreme Court's recitation of the following relevant facts and procedural history from the petitioner's trial is useful to our resolution of the petitioner's claim: "One of the offenses with which the [petitioner] was charged was conspiracy to possess more than one kilogram of marijuana with the intent to sell. The information alleged that the [petitioner] had committed the following two overt acts in furtherance of the conspiracy: (1) '[the petitioner] arranged with . . . Anderson to have marijuana delivered to the home of . . . Levarge'; and (2) '[he later] went to [Levarge's] home . . . to pick up marijuana for the purpose of delivering it to . . . Anderson . . . .'

"[T]he evidence adduced at trial established that, after Levarge approached Bardelli with information

regarding the package of marijuana, the police arranged for Levarge to make a telephone call to Anderson. In that call, which the police tape-recorded, Levarge notified Anderson that the shipment had arrived, and Anderson agreed to send the [petitioner] to pick up the package of marijuana from a vehicle that was parked outside Levarge's home. The state notified the [petitioner] that it intended to introduce into evidence the tape recording of the conversation between Levarge and Anderson.

"The [petitioner] objected to the state's use of that tape recording. In particular, the [petitioner] claimed that, because Levarge was acting as an agent of the police when he telephoned Anderson, he was not a coconspirator within the meaning of this state's conspiracy statute. See General Statutes § 53a-48 (a). In support of his contention, the [petitioner] relied on *State* v. *Grullon*, 212 Conn. 195, 198–99, 203, 562 A.2d 481 (1989), in which this court held that an accused cannot be guilty of conspiracy unless the state has proven beyond a reasonable doubt that the accused conspired with a person other than a police informant or agent. The [petitioner] asserted that, because Levarge was acting as an agent of the police prior to placing the telephone call to Anderson, he was 'contaminated' when he made that call. The [petitioner] further asserted that that 'contamination flow[ed] downward from Levarge to Anderson,' and 'across to both [the petitioner] and Anderson,' with the result that the tape-recorded conversation could not be used to establish the existence of a conspiracy between Anderson and the [petitioner], apparently because the conspiracy was no longer ongoing once Levarge had agreed to cooperate and to place the telephone call. The trial court [overruled] the [petitioner's] objection and permitted the state to introduce the tape recording into evidence." *State* v. *Cabral*, supra, 275 Conn. 528–30. The petitioner did not object on hearsay

grounds to the state's use of the tape-recorded conversation; id., 529 n.10; but also argued that the tape was unduly prejudicial in that it contained "certain expletives that were part of the conversation." Id., 530 n.11.

The petitioner argued before the habeas court that O'Brien was ineffective in that he did not object on hearsay grounds to the tape recording. The habeas court noted that O'Brien had objected to the tape recording on the ground that *Grullon* prohibited its admission. The habeas court also noted that when the petitioner, in his direct appeal, challenged the trial court's admission of the tape on that ground, this court agreed and reversed the judgment of conviction, in part, on that basis. See *State* v. *Cabral*, supra, 75 Conn. App. 317. The habeas court reasoned: "While it is true that attorney O'Brien did not raise the hearsay issue before the trial court, he did object to the admissibility [of the tape] on proper legal grounds, which were upheld by the Appellate Court. It cannot, then, be found that the attorney was deficient in the performance of his duties with respect to the admission of the tape into evidence."

In his direct appeal to this court, the petitioner claimed that the tape-recorded conversation was inadmissible because Levarge's statements did not fall within any recognized hearsay exception. *State* v. *Cabral*, supra, 75 Conn. App. 316. This court reasoned that, under *Grullon*, Levarge was not a member of a conspiracy when police recorded his conversation with Anderson and, thus, statements by Levarge within the tape-recorded conversation did not fall within the coconspirator exception to the hearsay rule, Conn. Code Evid. § 8-3 (1) (D). *State* v. *Cabral*, supra, 316. After concluding that the trial court improperly admitted the evidence, this court further concluded that the petitioner demonstrated that the court's ruling was not harmless but "undermined confidence in the fairness of the verdict." Id., 318.

Our Supreme Court determined that this court improvidently had reviewed and afforded relief on the basis of the hearsay claim because O'Brien had not raised a hearsay objection before the trial court. *State v. Cabral*, supra, 275 Conn. 531. The court declined to review this nonconstitutional claim. Id.

The petitioner now claims that O'Brien's failure to raise the hearsay objection at trial amounted to ineffective assistance and that such conduct prejudiced him both at trial and during the appeal process. The petitioner argues: "If O'Brien had articulated a proper legal objection to the inclusion of the tapes, there is the likelihood that the trial court would have recognized the inappropriateness of admitting the tapes, and the jury would not have had the conversation between Levarge and Anderson to consider. It would have been highly likely then that the state could not have met its burden of proving the petitioner's guilt beyond a reasonable doubt."

As set forth previously, our Supreme Court discussed the nature of the objections raised by O'Brien at trial. The court rejected the petitioner's claim that the tape was unduly prejudicial. *State v. Cabral*, supra, 275 Conn. 531 n.13. The court also rejected the claim raised under *Grullon*, noting that "the state was not seeking to establish a conspiracy between Levarge and the [petitioner] but, rather, between Anderson and the [petitioner]." Id. As evidenced by this ruling, the court determined that Levarge's statements on the tape recording did not render the evidence inadmissible.

The court's reasoning guides our analysis of the hearsay claim on which the petitioner bases this claim. It is undisputed that the tape recording at issue included statements made by Levarge and Anderson that concerned and furthered the alleged ongoing conspiracy involving the petitioner. The petitioner argues that the

statements constituted inadmissible hearsay and that the coconspirator exception to the hearsay rule did not apply. "A statement that is being offered against a party and is . . . (D) a statement by a coconspirator of a party while the conspiracy is ongoing and in furtherance of the conspiracy" is not excluded by the hearsay rule. Conn. Code Evid. § 8-3 (1). As our Supreme Court noted in rejecting the petitioner's claim raised solely under *Grullon,* the state properly introduced the tape recording seeking to establish a conspiracy between Anderson and the petitioner. *State* v. *Cabral,* supra, 275 Conn. 531 n.13. Regardless of whether Levarge was a coconspirator at the time that the police recorded the conversation at issue, the taped conversation made it more likely than not that the petitioner and Anderson were coconspirators as the state alleged. Anderson's statements in furtherance of the alleged ongoing conspiracy with the petitioner were the statements of the petitioner's coconspirator and, thus, were admissible under the coconspirator exception to the hearsay rule. Even if we assume that Levarge was not a coconspirator at the time the tape recording was made and that his statements were not otherwise admissible, his statements during the taped two party telephone conversation were nonetheless admissible, as the state argues, because they provided necessary context for the finder of fact fairly to consider and to evaluate Anderson's statements. See Conn. Code Evid. § 1-5 (a).[1]

---

[1] Section 1-5 (a) of the Connecticut Code of Evidence provides: "Contemporaneous introduction by proponent. When a statement is introduced by a party, the court may, and upon request shall, require the proponent at that time to introduce any other part of the statement, whether or not otherwise admissible, that the court determines, considering the context of the first part of the statement, ought in fairness to be considered contemporaneously with it."

" 'Statement,' as used in this subsection, includes written, recorded and oral statements. Because the other part of the statement is introduced for the purpose of placing the first part into context, the other part need not be independently admissible." Conn. Code Evid. § 1-5 (a), commentary.

The record reflects that O'Brien strenuously challenged the admissibility of the tape recording on two distinct grounds. Even if we assume arguendo that O'Brien was deficient in failing to raise a hearsay objection, we conclude that the petitioner is unable to demonstrate that O'Brien's failure in this regard caused him any prejudice. The tape recording was admissible under our rules of evidence. Accordingly, the petitioner's ineffective assistance claim fails under *Strickland*'s second prong.

The judgment is affirmed.

In this opinion the other judges concurred.