## JESUS RUIZ *v.* WARDEN*

Superior Court, Judicial District of Tolland
File No. CV-10-4003608 S

Memorandum filed September 4, 2013

*Damon A. R. Kirschbaum*, for the petitioner.

*David Clifton*, assistant attorney general, for the respondent.

SFERRAZZA, J. The petitioner, Jesus Ruiz, seeks habeas corpus relief from his imprisonment following his convictions, after a jury trial, for two counts of sexual assault in the first degree; sexual assault in the fourth degree; and risk of injury to a child. He received a total effective sentence of seventeen years incarceration, execution suspended after the service of twelve

---

* Affirmed in part. *Ruiz* v. *Commissioner of Correction*, 156 Conn. App. 321, 113 A.3d 485 (2015).

years, and ten years of probation. The petitioner's convictions were affirmed on direct appeal. *State* v. *Ruiz*, 124 Conn. App. 118, 3 A.3d 1021, cert. denied, 299 Conn. 908, 10 A.3d 525 (2010). The petitioner avers in the first count of his amended petition that his criminal defense counsel, Attorneys John Ivers and Robert Casale, provided ineffective assistance, and in the second count that his appellate counsel, Attorney Carlos Candal, was also ineffective. The respondent, the Commissioner of Correction, has denied these allegations and asserts as special defenses deliberate bypass, procedural default, and res judicata.

Our Supreme Court has adopted the two-pronged *Strickland* test for evaluating ineffective assistance claims. *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 425, 589 A.2d 1214 (1991); *Ostolaza* v. *Warden*, 26 Conn. App. 758, 761, 603 A.2d 768, cert. denied, 222 Conn. 906, 608 A.2d 692 (1992). The *Strickland* criteria requires that the petitioner demonstrate, by a preponderance of the evidence, both that his attorney's performance was substandard and that the outcome of the proceedings would have been different. *Ostolaza* v. *Warden*, supra, 761.

As to the performance prong of *Strickland*, the petitioner must establish that trial counsel's representation fell below an objective standard of reasonableness. *Johnson* v. *Commissioner of Correction*, supra, 218 Conn. 425.

This standard of reasonableness is measured by prevailing, professional norms. Id. The habeas court must make every effort to eliminate the distorting effects of hindsight and to reconstruct the circumstances surrounding counsel's conduct from that attorney's perspective at the time of the representation. Id.

If it is easier to dispose of a claim of ineffective assistance on the ground of insufficient proof of prejudice, the habeas court may address that issue directly

without reaching the question of counsel's competence. *Pelletier* v. *Warden*, 32 Conn. App. 38, 46, 627 A.2d 1363, cert. denied, 227 Conn. 920, 632 A.2d 694 (1993). In order to satisfy the prejudice prong of the *Strickland* test, the petitioner must prove, by a preponderance of the evidence, that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Levine* v. *Manson*, 195 Conn. 636, 640, 490 A.2d 82 (1985). Reasonable probability means a probability sufficient to undermine confidence in the verdict. *DaEria* v. *Commissioner of Correction*, 107 Conn. App. 539, 542–43, 946 A.2d 249 (2008), cert. denied, 289 Conn. 911, 957 A.2d 877 (2008). That is, the petitioner must show that there is a reasonable probability that he remains burdened by an unreliable determination of guilt. Id., 542.

I

INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The petitioner specifically alleges that Attorney Ivers and Attorney Casale ineffectively assisted him by failing to secure the minor victim's[1] school, medical, and Department of Children and Families records; that they failed to cross-examine a witness at a *Jarzbek* hearing adequately; that they failed to present the testimony of a mental health expert at that hearing; that they failed to cross-examine the victim and constancy of accusation witnesses properly; and that they failed to proffer the testimony of a mental health expert at the criminal trial.

A

*Jarzbek* Hearing

There is a preliminary issue that the court must address regarding the specification of deficient representation surrounding the *Jarzbek* hearing. The prosecutor filed a motion pursuant to General Statutes § 54-86g, as circumscribed by *State* v. *Jarzbek*, 204 Conn.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline

683, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988), asking the trial court for permission to videotape the testimony of the victim outside the physical presence of the petitioner. In response, Attorney Ivers requested, pursuant to the holding of State v. Marquis, 241 Conn. 823, 699 A.2d 893 (1997), that the trial court order that a defense mental health expert examine the victim before ruling on the Jarzbek issue. The trial court denied the Marquis examination and granted the Jarzbek motion. Consequently, the victim's testimony was presented to the jury by video recording, in lieu of her live testimony, with the petitioner present in the courtroom.

Evaluating these allegations of defective representation concerning the Jarzbek motion and hearing under the Strickland standard as described above, the petitioner bears the burden of proving that, but for his former lawyers' inadequacies, there exists a reasonable probability that the outcome of his criminal trial would have been different. A threshold question arises as to what constitutes a different outcome in the context of claims pertaining to the Jarzbek/Marquis procedure.

Is it sufficient to demonstrate a reasonable probability that the result of these motions and hearings would have been more to the petitioner's liking, or does the petitioner need to establish a reasonable probability of acquittal, i.e., is he burdened by an unreliable finding of guilt? The court holds that it is the outcome of the criminal trial, rather than that of the preliminary hearings, which is the focus of the prejudice prong of Strickland. Of course, a different result for these pretrial motions may be highly determinative of the ultimate outcome, depending on the nature of the subsidiary rulings and other evidence adduced at the criminal trial.

to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

The court's research discloses no Connecticut case, United States Supreme Court case, or Second Circuit Court of Appeals case precisely on point. However, there are several cases involving analogous circumstances which lead the court to conclude that the material issue for *Strickland* prejudice analysis is the ultimate finding of guilt.

First, a determination of whether *habeas* relief ought to be afforded for negligent failures by counsel to protect the constitutional rights of an accused are not coincidental with the adjudication of these constitutional rights on *direct* appeal. As elaborated above, ineffective assistance claims are usually assessed using the two-pronged test of *Strickland*, namely, deficient performance which prejudices outcome. The United States Supreme Court has characterized the requisite impact needed to satisfy the prejudice component of the *Strickland* standard as " 'outcome determinative' . . . ." *Delaware* v. *Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). The *Strickland* test "by [its] nature require[s] a showing of prejudice with respect to the trial as a *whole* . . . ." (Citation omitted; emphasis added.) Id., 680.

The *Van Arsdall* case was a direct appeal based on a denial of the right to confront witnesses, and the United States Supreme Court distinguished the appropriate prejudice standard, viz., harmless error, from the *Strickland* prejudice component. Id. Under harmless error analysis, the state must affirmatively demonstrate a lack of prejudice, whereas, under the *Strickland* analysis, the inmate bears the affirmative burden to prove that the deficient acts of counsel affected the final result of the trial. *United States* v. *Cruz*, 785 F.2d 399, 405 (2d Cir. 1986).

A survey of Connecticut appellate decisions supports the conclusion that it is the legitimacy of the conviction

which must be undermined by counsel's poor representation rather than the loss of a preliminary motion or objection standing alone which suffices to afford habeas relief for ineffective assistance. For instance, with respect to ineffective assistance in the failure to exclude an identification, the Appellate Court stated, "[W]e cannot conclude that there is a reasonable probability that, but for the alleged unprofessional errors of counsel, the trial court would have ruled differently on the suppression of the hospital identification such that the *outcome of the trial* would have been different." (Emphasis added.) *Davis* v. *Commissioner of Correction,* 125 Conn. App. 449, 464, 7 A.3d 941 (2010), cert. denied, 300 Conn. 915, 13 A.3d 1104 (2011).

Similarly, in *Necaise* v. *Commissioner of Correction,* 112 Conn. App. 817, 964 A.2d 562, cert. denied, 292 Conn. 911, 973 A.2d 660 (2009), that court remarked, "Because no evidence was produced as to the suggestiveness or unreliability of the identification procedures, there was no evidence that had [the petitioner's] trial counsel filed a motion to suppress the identifications, it would have been granted by the trial court. As there was no evidence as to whether the motion to suppress would have been successful, the petitioner has failed to show that there is a reasonable probability that the alleged deficiency *affected the outcome of his case.* The petitioner has not met his burden of proof with respect to the prejudice prong of the *Strickland* test." (Emphasis added.) Id., 824.

The same analyses have been applied to ineffective assistance claims of failing to file or pursue adequate motions to exclude admissions and confessions. *Cabral* v. *Commissioner of Correction,* 108 Conn. App. 1, 13–14, 946 A.2d 1278, cert. denied, 288 Conn. 915, 954 A.2d 183 (2008); see also *Thergood* v. *Commissioner of Correction,* 109 Conn. App. 710, 952 A.2d 854, cert. denied, 289 Conn. 953, 961 A.2d 422 (2008). "When [a petitioner]

challenges a conviction, the question [as to prejudice] is whether there is a reasonable probability that, absent the [attorney's] errors, the factfinder would have had a reasonable doubt *respecting guilt.*" (Emphasis added; internal quotation marks omitted.) *Thergood* v. *Commissioner of Correction*, supra, 716; see also *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 813–14, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413, cert. denied sub nom. *Toccaline* v. *Lantz*, 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004); *Minnifield* v. *Commissioner of Correction*, 62 Conn. App. 68, 767 A.2d 1262, cert. denied, 256 Conn. 907, 772 A.2d 596 (2001). "[W]e cannot conclude that even if the confession had been suppressed, the *outcome* would have been different." (Emphasis added.) *Minnifield* v. *Commissioner of Correction*, supra, 76.

Thus, in order to prove the prejudice component of the *Strickland* standard, the petitioner must, ultimately, demonstrate that the final outcome of the criminal trial was negatively impacted by the failure to suppress illegally obtained evidence rather than merely make a showing of a reasonable probability that, but for counsel's unprofessional conduct, the outcome of the *suppression* hearing would have been favorable. *State* v. *Brown*, 279 Conn. 493, 526, 903 A.2d 169 (2006); *Ricks* v. *Commissioner of Correction*, 98 Conn. App. 497, 516–18, 909 A.2d 567 (2006), cert. denied, 281 Conn. 907, 916 A.2d 49 (2007). Evidence which would have been suppressed as illegally obtained from one source caused no prejudice because it was legally procured from another source. Id.

"In order to show ineffective assistance for the failure to make [or proceed with] a suppression motion, the underlying motion must be shown to be meritorious, *and* there must be a reasonable probability that the *verdict* would have been different if the evidence had been suppressed." (Emphasis added; internal quotation

marks omitted.) *Williams* v. *Commissioner of Correction*, 120 Conn. App. 412, 428, 991 A.2d 705, cert. denied, 297 Conn. 915, 996 A.2d 279 (2010). The same standard applies to counsel's failure to obtain *Brady* material. *Gibson* v. *Commissioner of Correction*, 135 Conn. App. 139, 149, 41 A.3d 700, cert. denied, 305 Conn. 922, 47 A.3d 881 (2012); see also *State* v. *Melendez*, 291 Conn. 693, 705–706, 970 A.2d 64 (2009). Proof of a reasonable probability of prevailing on the *Brady* motion is insufficient. The habeas petitioner must prove a reasonable probability of acquittal but for the failure to pursue a *Brady* claim.

There are at least two categories of attorney error which are exceptions to the meaning of "prejudice" in the context of an ineffective representation allegation. First, where defense counsel has labored under an actual conflict of interest, prejudice is presumed. *Phillips* v. *Warden*, 220 Conn. 112, 132–33, 595 A.2d 1356 (1991); *Goodrum* v. *Commissioner of Correction*, 63 Conn. App. 297, 317, 776 A.2d 461, cert. denied, 258 Conn. 902, 782 A.2d 136 (2001). Second, where the claim is directed at appellate counsel, the critical "outcome" is the result of the *appeal* rather than the result of a *new trial* upon remand after a successful appeal. *Small* v. *Commissioner of Correction*, 286 Conn. 707, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008), overruling in part *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 610 A.2d 598 (1992).

Parenthetically, there is also controversy as to whether a habeas petitioner who asserts that his or her defense counsel rendered substandard representation which resulted in a guilty plea must prove, by way of prejudice, merely that the petitioner would have elected to proceed with a trial had the defendant been properly advised, or must the petitioner also prove that the aftermath of any trial would have been more favorable than

the result of the flawed guilty plea. Our Supreme Court has held that the prejudice prong of *Strickland*, as modified by *Hill* v. *Lockhart*, 474 U.S. 52, 59–60, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), demands proof that the outcome of the entire criminal process was reasonably probable to have been more successful. *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 151, 662 A.2d 718 (1995). Our Appellate Court followed this precedent in *Gonzalez* v. *Commissioner of Correction*, 124 Conn. App. 740, 744–45, 6 A.3d 152 (2009), and *State* v. *Aquino*, 89 Conn. App. 395, 408, 873 A.2d 1075 (2005), rev'd on other grounds, 279 Conn. 293, 901 A.2d 1194 (2006). However, very recently, an Appellate Court panel held that the Connecticut Supreme Court's decision on this issue in *Copas* v. *Commissioner of Correction*, supra, 151, was an erroneous reading of the holding in *Hill* v. *Lockhart*, supra, 59–60. See *Carraway* v. *Commissioner of Correction*, 144 Conn. App. 461, 473–74, 72 A.3d 426 (2013).

Except for these two, or possibly three, exceptions, proof of prejudice under the *Strickland* criteria generally obligates the petitioner to show that the missteps of defense counsel had a reasonable probability of producing an unfavorable final, rather than interlocutory, result. The effect of the alleged professional deficiency must be causally linked to that ultimate outcome by a chain of negative consequences such that a reasonable probability exists that the substandard performance produced the criminal conviction and sentence under attack. If the lawyer's delinquencies made little difference in the final result, then the petitioner has failed to prove the prejudice prong under *Strickland*, no matter how flagrant the blunder.

Therefore, as to this specification of ineffectiveness, the petitioner must prove, by a preponderance, not only that the *Jarzbek* motion would have been denied and/or the *Marquis* motion granted, but that these hypothetical

outcomes create a reasonable probability that he would have been acquitted. The court determines that the petitioner has failed to meet this burden.

Assuming, arguendo, that the victim had to testify in person and in the presence of the petitioner, there was absolutely no persuasive evidence presented at the habeas trial that her testimony or believability would have been altered. This was not a case where the victim recanted her accusations against the petitioner or even wavered as to the content of those accusations. The petitioner cannot have it both ways. He cannot argue that the victim was so capable of testifying accurately in person that videotaped testimony was unnecessary under *Jarzbek* analysis and simultaneously argue for presumption that the victim, when subjected to the inquisitorial presence of the jury and the petitioner, would have been too intimidated to testify or would have dramatically contradicted her video testimony. Conjecture cannot be the basis upon which the prejudice prong of *Strickland* is founded. *Gonzalez* v. *Commissioner of Correction*, 127 Conn. App. 454, 458, 14 A.3d 1053, cert. denied, 302 Conn. 933, 28 A.3d 991 (2011). Prejudice must be established by "demonstrable realities." (Emphasis omitted; internal quotation marks omitted.) Id.

Having concluded that the petitioner has failed to prove the prejudice component of the Strickland standard, the court does not address the performance prong as to the *Jarzbek/Marquis* motions.

B

Trial Representation

The petitioner omits any discussion in his pretrial memorandum of the allegation that his defense counsel failed to obtain appropriate records pertaining to the victim. The court, therefore, treats that specification of

ineffective assistance as abandoned. Also, the amended complaint lacks any allegation that the failure to produce Tiffany R. as a defense witness constituted substandard representation. That circumstance, then, cannot alone form the basis for habeas relief, although it may be relevant to other claims which the court will address. The remaining allegations of ineffective assistance all revolve around the decision of Attorneys Ivers and Casale not to employ a suggestibility defense to explain why the victim would avow that the petitioner sexually assaulted her when those events never occurred. Specifically, the petitioner contends that his defense counsel failed to call Dr. David Mantell to attack the efficacy of the interview methods used by the medical and investigative personnel who examined the victim, and that they failed to cross-examine these witnesses and other constancy of accusation witnesses regarding possible unintentional implantation of a false memory of sexual assault in a particularly vulnerable child's mind.

Attorneys Ivers and Casale engaged a defense theory that the victim purposefully fabricated accusations of sexual assault against the petitioner to deflect further inquiry, and blame, concerning the victim's lies about her brother threatening her with a knife. The victim gave exaggerated reports to school employees about the knife incident. The next day the victim was to be confronted about the purported assault involving her brother; and the victim argued with her mother about attending school that day. Her mother insisted that the victim go to school, and when the victim arrived at school she informed a school counselor that she had been sexually molested by the petitioner.

That revelation prompted several subsequent discussions conducted by health care providers and law enforcement personnel, including forensic interviewers specially trained to elicit information from children who

may have been subjected to abuse. The victim was five or six years old when the putative sexual assaults occurred. She was nine years old at the time of her initial complaint to school authorities, and she was eleven years old when she testified by video recording. The victim was assessed as having a lower than average IQ, displaying weak language skills, and exhibiting poor self-esteem for her age. Her IQ test result was sixty-nine, and her cognitive deficits were classified as mild.

The court has reviewed the recorded interview when the victim was nine and eleven. To a layperson, the measured cognitive deficits are not at all apparent. The victim was responsive, and her answers were conversational and descriptive. She clearly was capable of reading and writing, and composed, without assistance, a short, but poignant letter, to her brother. She spontaneously elaborated on her responses and supplied unsolicited details. Her memory seemed good, and she never hesitated to indicate when she lacked information about the question posed. Her oral responses were sometimes accompanied by physical gestures as she spoke, such as when she described how the petitioner lowered her panties.

Significantly, she related activity unlikely to have been the result of suggestion. For instance, she recalled that after the petitioner digital penetrated her, he "sniffed" his fingers. She also described how the petitioner's penis kept "popping up."

During cross-examination by defense counsel, the victim stated that she was deeply saddened by her parents' separation. She acknowledged that she resented the attention that her mother gave to the petitioner, and that, on occasion, she wished that he would leave the home.

The petitioner argues that his defense counsel ought to have adopted the suggestibility defense, i.e., that the

victim simply regurgitated events which she had heard happened to someone else or were implanted as a false memory by the biased techniques of her interrogators. As noted above, Attorneys Ivers and Casale opted instead to put forward a "deflection" defense, i.e., that the victim intentionally conjured up an untrue sexual assault complaint to avoid responsibility for having told a previous lie about her brother's threats with a knife. Both defense theories entailed features which were inconsistent with the other evidence in the case.

As to the deflection of blame argument, the victim had admitted exaggerating her brother's actions just one day before she spoke to school officials about the petitioner's misconduct. She wanted to get out of having to explain herself at school and had tried to convince her mother to keep her home that day. Her mother disbelieved the victim's allegations of sexual assault and characterized her daughter as a pathological prevaricator. Add to this evidence the victim's resentment toward the petitioner, and the defense theory chosen by the petitioner's defense team was a plausible motivation for the victim to lie about being molested by the petitioner a few years before.

However, the victim's aunt testified that the victim had disclosed to her what the petitioner had done to her *before* the victim's disclosure at school. The aunt advised the victim's mother about the molestation, but the victim's mother refused to believe the charge. This evidence, of course, weakened the deflection defense theory, but Attorneys Ivers and Casale felt that this defense theory was stronger than the suggestibility defense which the petitioner now contends ought to have been proffered.

The defense team declined to use a scattershot defense approach. In other words, they opined that

presenting multiple, and potentially conflicting, theories would damage the viability of each defense. They preferred to adhere to one theory rather than risk of having alternative defenses "bump into" one another.

The petitioner's defense lawyers suspected that emphasizing the victim's intellectual weakness might simply engender sympathy toward her in the eyes of the jury. It would also call into question the victim's capacity to create and maintain a cohesive, but imaginary, account of being sexually abused by the petitioner.

Also, the suggestibility approach would require the defense to assail the competence of all of the professionals who interviewed the victim. These medical and investigative interrogators possessed prestigious credentials, training, and vast experience working with children who may have been abused. Cross-examination of these witnesses would have necessitated replaying the damning video recordings of the interviews over and over for the jury. This court's viewing of those recordings revealed a very sympathetic and believable victim interviewed by well-intentioned interrogators who deftly and carefully questioned the victim without noticeable suggestion or coercion. Indeed, Dr. Mantell's preliminary review of these sessions left him with the impression that the victim was a "reliable" source of information.

In any event, the petitioner was financially unable to hire Dr. Mantell to testify. Defense counsel retained Dr. Mantell, as a consultant only, for a fee of $4000, around one-quarter of which fee was paid by counsel from their own legal fee retainer. Dr. Mantell required an additional advance of $8000 to $10,000 to participate any further in the defense case. Attorney Ivers testified at the habeas hearing that the petitioner could not raise this retainer, and the court finds this testimony credible. Thus, the barrier to an expert attack on the interview

methods of the prosecution witnesses was financial rather than any misjudgment by defense counsel.

The proposed defense of suggestibility also had evidentiary pitfalls. First, the petitioner would have had to present the testimony of the petitioner's niece, Tiffany R. The victim had disclosed that Tiffany had once told her that she had been sexually abused, and if that ever happened to the victim, the victim should report it. Tiffany was never called to testify by the prosecution because she resided out of state and could not be located. Attorneys Ivers and Casale recognized that if they located Tiffany and presented her testimony, it would destroy the deflection defense because Tiffany's conversation with the victim occurred well before the questionable knife incident which was supposed to be the motivation for the false sexual assault report. It was also possible that Tiffany's own abuser might turn out to be the petitioner.

Tiffany did testify at the habeas trial. She corroborated the victim's recollections about the conversation they had concerning sexual abuse. She recalled that when she advised the victim to report such abuse, the victim looked sad. When Tiffany inquired about this change in demeanor, the victim told her that she had already been the subject of sexual misconduct by the petitioner. Tiffany testified that the petitioner was not the person who had molested her, but one can easily comprehend why defense counsel would let that sleeping dog lie and not attempt to locate Tiffany.

The suggestibility issue was also refuted by the victim's ability to resist the repeated, prolonged, and intense pressure applied to her by her mother to recant the allegations against the petitioner. Certainly, if the victim's intellectual level and emotional status was such so as to make her particularly malleable and prone to

generating false memories because of Tiffany's experience, reinforced by the allegedly biased interviews by the professional interrogators who were trying to avoid that very phenomenon, how much more likely it is that she would have succumbed to her mother's incessant entreaties and accusations of being "a big, fat liar."

Also, given Dr. Mantell's initial opinion regarding the reliability of the victim as an accurate historian, his later reversal of that conclusion loses much of its persuasive force. Instead, it might appear as if the new opinion was purchased or tentative. His vacillation would have cast doubt on his entire testimony and his ability to discern proper from improper interview practices.

Unsuccessful tactical decisions which are the result of the reasonable exercise of professional judgment still constitute effective representation, despite the lack of a favorable outcome. *Stephen S.* v. *Commissioner of Correction*, 134 Conn. App. 801, 820–21, 40 A.3d 796, cert. denied, 304 Conn. 902, 43 A.3d 660 (2012). Reasonableness is viewed from the trial lawyer's perspective at the moment when the decision is made rather than through the distorting lens of hindsight, *Vines* v. *Commissioner of Correction*, 94 Conn. App. 288, 296, 892 A.2d 312, cert. denied, 278 Conn. 922, 901 A.2d 1222 (2006).

The court determines that the decision by Attorneys Ivers and Casale to focus solely on the defense theory they pursued at the petitioner's criminal trial was an informed and logical, tactical choice which fell within the broad spectrum of acceptable legal representation. Because all of the petitioner's specifications of ineffective assistance of defense counsel hinged on his contention that they were obligated to present a suggestibility defense and this court has rejected that contention, the various allegations of improper acts fail also.

## II

The petitioner makes no argument in his posttrial memorandum concerning the second count pertaining to appellate representation; the court regards that count as abandoned.

The amended petition for habeas corpus relief is denied.